1

2

3

4        UNITED STATES DISTRICT COURT

5        EASTERN DISTRICT OF WASHINGTON

6  NANCY SAMPSON,

7        Plaintiff,                          NO.  CV-11-03127-JLQ

8  v.                                        MEMORANDUM OPINION AND
                                             ORDER RE:  MOTIONS FOR
9  CAROLYN W. COLVIN,                        SUMMARY JUDGMENT
   Commissioner of Social Security[1],
10
        Defendant.
11

12        BEFORE THE COURT are Cross-Motions for Summary Judgment.  (ECF

13  NO. 17 & 23).  Plaintiff is represented by **James Tree**.  Defendant is represented

14  by Assistant United States Attorney **Pamela J. DeRusha** and Special Assistant

15  United States Attorney **Kathy Reif**.  This matter was previously before Magistrate

16  Judge Imbrogno.  It was reassigned to the undersigned for all further proceedings

17  on May 1, 2013.  The court has reviewed the administrative record and the parties'

18  briefs.  The case was submitted for decision without oral argument on May 6,

19  2013.

20        This court's role on review of the decision of the Administrative Law Judge

21  (ALJ) is limited.  The court reviews that decision to determine if it was supported

22  by substantial evidence and contains a correct application of the law.  *Valentine v.*

23  *Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  This court is

24  _____

25        [1]Carolyn W. Colvin became the Acting Commissioner of Social
    Security on February 14, 2013.  Pursuant to Rule 25(d) of the
26  Federal Rules of Civil Procedure, Ms. Colvin is substituted for
    Michael Astrue as the Defendant in this suit.  No further action
27  need be taken to continue this suit by reason of the last sentence
    of 42 U.S.C. 405(g).
28

ORDER - 1

obligated to affirm the ALJ's findings if they are supported by the evidence and reasonable inferences to be drawn therefrom. *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

## I. JURISDICTION

In January 2009, Plaintiff/Claimant Nancy Sampson filed an application for supplemental security income (SSI) alleging a disability onset date of January 1, 2009. Plaintiff alleges disability primarily attributable to mental impairments including anxiety and post-traumatic stress disorder (PTSD). Plaintiff also alleges pain in her neck and degenerative disc disease. Her application was denied initially, and on reconsideration. After timely requesting a hearing, Plaintiff appeared before Administrative Law Judge Donna Shipps on September 29, 2010. (Transcript at ECF No. 11-2 pages 41-75). The ALJ issued a decision denying benefits on November 9, 2010. (ECF No. 11-2, p. 14-24). Plaintiff filed a request for review with the Appeals Council, which was denied on October 25, 2011. The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

## II. SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is, benefits are denied.  If she is not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform her previous work, she is not disabled.  If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a

physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III.  STANDARD OF REVIEW

        "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).    This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence.  *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

### IV.  STATEMENT OF FACTS

        The facts are contained in the medical records, administrative transcript, and the ALJ's decision, and are only briefly summarized here.  At the time the ALJ

issued her decision, Plaintiff was 52 years old. Plaintiff is a high school graduate. Plaintiff's most recent relevant work experience was as a home health aid, which she last performed in 1999. Thus, Plaintiff had not worked for approximately 10 years prior to the alleged disability onset date of 2009.

Plaintiff claimed disability based primarily on her anxiety and degenerative disc disease. The ALJ found Plaintiff was not disabled.

## V.  COMMISSIONER'S FINDINGS

The ALJ found at **Step 1** that Plaintiff had not engaged in substantial gainful activity since January 13, 2009, the application date.

At **Step 2**, the ALJ found the medical evidence established the following severe impairments: chronic pain secondary to degenerative disc disease; anxiety disorder; post traumatic stress disorder; and panic disorder .

At **Step 3**, the ALJ determined that the Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Specifically, the ALJ considered whether Plaintiff met Listing 1.04 for degenerative disc disease and found that the records did not support such a finding as there was no evidence of nerve root compression or motor loss accompanied by sensory or reflex loss.  The ALJ also considered whether Plaintiff's mental impairments, singly and in combination, met or medically equaled Listing 12.04 and 12.06.

At **Step 4**, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of medium work as defined in 20 CFR 416.967(c). The ALJ found Plaintiff could work away from the general public, and could work in proximity to others, but not in close cooperation.  The ALJ found the Plaintiff "can work in jobs that do not require regular change in the duties or work environment." (ECF No. 11-2, p. 18).

In making this determination, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged

symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (*Id.*).  In finding Plaintiff not credible, the ALJ considered her daily activities and her voluntary disregard of medical advice.  The ALJ observed that Plaintiff recognized Cymbalta was helpful for her depression and anxiety and voluntarily stopped taking it.  The ALJ observed that Plaintiff was able to care for her two grandchildren.  The ALJ also believed that Plaintiff's long-term reliance on public assistance and her comment that she would rather care for her grandchildren than pursue employment lessened her credibility and raised the issue of secondary gain.

The ALJ concluded the Step 4 analysis by finding that Plaintiff was unable to perform her past relevant work.

At **Step 5** the ALJ found, considering Plaintiff's age, education, work experience, and residual functional capacity, that there were a significant number of jobs in the national economy that Plaintiff could perform.  The ALJ consulted a vocational expert who testified based on hypothetical questions that an individual with Plaintiff's limitations would be able to perform jobs such as laundry spotter, small products assembler, and charge account clerk.  The ALJ concluded Plaintiff was not disabled.

## VI. ISSUES

Plaintiff's briefing identifies three issues for review: 1) did the ALJ err in improperly rejecting the opinions of Ms. Sampson's treating and examining medical providers; 2) did the ALJ err in improperly rejecting Ms. Sampson's subjective complaints; and 3) did the ALJ err at Step 5 in identifying jobs Ms. Sampson could perform? (ECF No. 18, p. 11).  These are the issues for review. The court will not search the brief for further issues, and should not address issues which are not specifically identified nor supported with developed arguments. See *Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008)(noting that the court will generally "not consider matters on appeal that are not specifically

and distinctly argued in appellant's opening brief").

## VII. DISCUSSION

**A.  Did the ALJ err in improperly rejecting the opinions of Plaintiff's treating and examining medical providers?**

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Crane, Leslie Thompson, David Hulslander, and Brett Wenger. (ECF No. 18, p. 13). Thompson, Hulslander, and Wenger all appear to be mental health counselors with the following credentials: Hulslander, B.A.(Bachelor of Arts); Thompson, M.A.(Master of Arts); and Wenger, LMHC (Licensed Mental Health Counselor). Plaintiff also makes one brief mention of Dr. Mashburn. (ECF No. 18, p. 16).  The medical record overwhelmingly supports the ALJ's decision and the ALJ gave sufficient explanation to the weight afforded the various medical providers.

The record does not establish that Plaintiff had marked physical impairments that rendered her unable to work.  The references to degenerative disc disease in the record describe it as "mild".  See for example (ECF No. 11, p. 249, 349, 400).  Although Plaintiff did at times report pain, stiffness, and/or numbness related to this condition, when she saw Dr. Hoover in March 2009, she was "significantly better on celexa" and reported being "pain free today". (ECF No. 11, p. 244).  Dr. Hoover also reported that Plaintiff's range of motion was not limited, and reported her neck pain and headaches as "mild". (*Id.* at 247-250).  An Imaging of Plaintiff's spine in July 2009 resulted in the impression of "mild" degenerative disc disease. (*Id.* at 349).

Plaintiff's more serious impairments appear to be mental - - anxiety and PTSD.  This is notable, because according to the office visit records of Dr. Hoover in March 2009, Plaintiff believed she was entitled to disability for her physical limitations.  According to Dr. Hoover's notes: "asked her for what reasons she si seekign [sic] dshs coverage feels she should get dshs for her neck 'I want to

ORDER - 7

double check that injury.' today she doesn't think there are any other reasons she should get dshs...antidepressants working really great for her is off muscle relaxer she has no pain today." (ECF No. 11, p. 244).

A psychiatric review by Dr. Bailey in March 2009 concluded that Plaintiff's mental impairments resulted only in mild restriction of activities of daily living, mild difficulties in social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (ECF No. 11, p. 280). In April 2009 during mental health counseling she told Mr. Hulslander that she was interested in taking up cycling and doing more outdoor activities to get in shape. (*Id.* at 308). Plaintiff also reported to Hulslander that she "stopped taking her Celexa because it interfered with her sex life, her art, and her writing" and that she planned to treat her anxiety through yoga. (*Id.* at 311). When Brett Wenger performed a psychological/psychiatric evaluation in December 2009, he reported that Plaintiff was taking Cymbalta, an anti-depressant, with benefit to all areas of function and that Plaintiff would likely be able resume substantial gainful activity. (*Id.* at 352-54).

When Plaintiff saw Dr. Coffey, Pharm. D., in October 2009, she reported that anxiety was her most bothersome symptom. She also reported she was "doing better" and is able to sleep 8 hours a night. Dr. Coffey prescribed Cymbalta and Plaintiff admitted that Cymbalta was "helpful for her depression and anxiety" at an office visit in January 2010, but she decided to stop taking it because of something she had read concerning side effects. (*Id.* at 376). Dr. Coffey also found that Plaintiff had no impairment of memory or intellectual functioning and that her insight and judgment were fair to good. (*Id.* at 377).

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: 1) treating physicians, who actually treat the claimant; 2) examining physicians, who examine but do not treat

the claimant; and 3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight is given to the opinion of the treating physician than to the opinions of non-treating physicians. *Id.*  If a treating physician's opinion is uncontradicted, it may be rejected only for clear and convincing reasons, and if it is contradicted, it may be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Id.*  An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc.Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004) see also *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ gave extensive reasons for why she credited the testimony of independent medical expert Margaret Moore, PhD, who testified at the hearing. The ALJ found the record as a whole consistent with Dr. Moore's testimony and that her testimony "best summarizes the claimant's mental situation in noting that the claimant does retain some symptoms and will have moderate social difficulties." (ECF No. 11-2, p. 20).  The ALJ's opinion demonstrates careful review of the medical records and discusses Dr. Mashburn, therapist David Hulslander, Crystal Coffey, Deborah Dove, Dr. Mark Hoover, Rita Flanagan, Dr. Norman Staley, and Dr. Jean Crane.

As to the opinions of Leslie Thompson and Brett Wenger, which were not specifically discussed by the ALJ, it is noted that portions of  those opinions predate the alleged onset date of disability. See *Carmickle v. Commissioner*, 533 F.3d 1155, 1165 (9th Cir. 2008)("Medical opinions that predate the alleged onset of disability are of limited relevance.").  Additionally, the opinions of Ms. Thompson and Mr. Wenger are not strongly supportive of a finding of disability.

Ms. Thompson's report, from November 2008, two months prior to the alleged onset of disability, stated that Plaintiff was "unlikely able to maintain full time employment **at this time**." (ECF No. 11, p.335)(emphasis added). It was also recommended that she attend job training to expand her skills. In December 2009, Mr. Wenger found that Plaintiff was experiencing benefit to all areas of function from anti-depressant medication and would likely be able to resume substantial gainful activity. (*Id*. at 353-55). Additionally, he indicated that vocational training would minimize or eliminate barriers to employment. (*Id.*).

Dr. Mashburn completed an evaluation of Plaintiff in March 2008, nearly nine months before the alleged date of onset. Although Dr. Mashburn did note one "marked" limitation in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, he also wrote in his report: "she doesn't want to work now (she wants to take care of grandkids) regardless of treatment..." (ECF No. 11, p. 216). Further, at the time of his report Plaintiff was not taking any medication for anxiety. Dr. Mashburn indicated an expected duration of 9 months to 2 years for Plaintiff's functional limitations. Nine months from March 2008 is January 2009, the alleged date of onset.

As to the opinion of Dr. Crane, the ALJ explained that Dr. Crane's conclusion that Plaintiff could not work full-time due to neck pain was not even consistent with Dr. Crane's own records which showed no more than mild to moderate neck pain. The ALJ also noted that Dr. Crane's Medical Report of December 9, 2009, stated that there were "few records in this office" to review, and thus Dr. Crane's conclusions are not based on a thorough review of Plaintiff's treatment history. The ALJ explained that the inconsistencies between Dr. Crane's opinion and the medical evidence caused her to grant the opinion "little weight". (ECF No. 11-2, p. 22).

Plaintiff argues that counselor David Hulslander, B.A., opined that Plaintiff's impairments constituted a serious limitation that prevented her from working as she wanted to. (ECF No. 18, p. 13).  Plaintiff does not cite to a specific page in the record to support this assertion.  The ALJ did discuss the treatment notes of David Hulslander, noting that Hulslander observed Plaintiff's "willing energy" and that she was "comfortable providing ideas" during their sessions. (ECF No. 11-2, p. 20).  Hulslander's records, as a whole, do not support a conclusion that Plaintiff is disabled, or unable to work.  For example, his notes from April 16, 2009, indicate that Plaintiff "is highly interested in cycling and being outdoors in order to be in shape and she would like to be able to do this and not be so concerned about what other people might be thinking." (ECF No. 11, p. 308).  Mr. Hulslander's records also raise some concern regarding Plaintiff's compliance with treatment, speaking of a delay in coming in for services, "lack of contact," and what to do if Plaintiff "no-shows the next appointment". (*Id.* at 315-16).

Additionally Mr. Hulslander is listed as "B.A." (presumably Bachelor of Arts) and therefore is not an acceptable medical source, but would rather be "other source" evidence. "[O]nly licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  In fact, Hulslander, B.A., Thompson, M.A., and Wenger, LMHC, are all "other source" evidence. See for example *Lassley v. Apfel*, 243 F.3d 548 (9th Cir. 2000)(therapist and licensed medical counselor was "'other source', whose opinion the ALJ may give less weight than that of an acceptable medical source."); *Fisher v. Astrue*, 429 Fed.Appx. 649 (9th Cir. 2011)(licensed mental health counselor not an acceptable medical source).

The ALJ appears to have thoroughly considered the medical record.  As discussed *supra*, the ALJ gave specific and legitimate reasons for the weight

ORDER – 11

assigned to the various opinions.  To the extent the ALJ did not throughly explain the weight given to the mental health counselors' records (Hulslander, Wenger, and Thompson), the ALJ need not specifically discuss every piece of evidence.  See *Roberts v. Commissioner*, 434 Fed.Appx. 657 (9th Cir. 2011)("While the ALJ may have erred by failing to mention the treatment notes of Drs. Coelho, Parvin, and Saunders...any such error was harmless...").  An error is harmless, if it is inconsequential to the ultimate nondisability determination. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

**B.  Did the ALJ err in failing to properly consider or reject Plaintiff's subjective complaints?**

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ "must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The *Cotton* analysis comes from the Ninth Circuit's opinion in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), and thereunder the claimant must: 1) produce objective medical evidence of an impairment or impairments; and 2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82.  If a claimant meets the *Cotton* test, then the ALJ may reject the claimant's testimony regarding the severity of symptoms only based on specific, clear, and convincing reasons. *Id.* at 1284.

The ALJ concluded that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms. (ECF No. 11-2, p. 18).  The ALJ was then required to assess the credibility of Plaintiff's testimony concerning the severity of her symptoms and limitations.  The ALJ found that Plaintiff's statements concerning intensity, persistence, and limiting effects of her symptoms

were not entirely credible.

The ALJ gave several reasons for this determination. The ALJ noted that Plaintiff had told health care providers she did not want to work, but wanted to stay home and take care of her grandchildren. The ALJ also observed that Plaintiff willfully chose to discontinue prescription medications which had been helpful. The ALJ also found that her long-term reliance on public assistance raised secondary gain concerns.

The ALJ did not entirely reject Plaintiff's subjective complaints, nor did the ALJ make an affirmative finding of malingering. However, the ALJ did find that Plaintiff's complaints were not entirely credible and were at times inconsistent with the medical record. In sum, the ALJ articulated numerous clear and convincing reasons why the ALJ concluded that Plaintiff's subjective complaints were inconsistent with her daily activities and with aspects of the medical record. The ALJ found her testimony concerning limitations inconsistent with her activities of daily living including being the primary care giver for two grandchildren for nearly two years. The fact that Plaintiff can partake in daily activities is not determinative of disability. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). However, the ability to participate in such activities is relevant to Plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations.

The ALJ also found Plaintiff's testimony regarding limitations inconsistent with aspects of the medical record. The court finds that a review of the entire medical record does not support a finding of error by the ALJ. Although the ALJ made no affirmative finding of malingering, evidence that Plaintiff was not taking medication, which had proved effective, could be considered by the ALJ as evidence of malingering, or at least a convincing reason to question her credibility. See *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2008)("If a claimant

complains about disabling pain but fails to seek treatment, or **fails to follow a prescribed treatment**, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.")(emphasis supplied).

The ALJ, not this court, is responsible for determining credibility, resolving conflicts in the medical testimony, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). An ALJ, when making a credibility determination adverse to the Plaintiff, must give specific, clear, and convincing reasons for doing so. *Thomas v. Barnhart*, 278 F.3d 947, 958-9 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, then the court must not engage in second-guessing. *Id.* at 959. In this case, the ALJ gave clear and convincing reasons, supported by the record, for finding Plaintiff's testimony concerning her limitations to be not entirely credible.

## C.  Did the ALJ err at Step 5 in identifying jobs Ms. Sampson could perform?

Although this point of error is phrased as a failure to identify specific jobs, the ALJ did identify specific jobs, and Plaintiff's argument actually complains that the ALJ asked an improper hypothetical to the vocational expert which did not include all of Plaintiff's limitations. The ALJ did not err in posing the hypothetical question. An ALJ is required to include only those limitations she finds supported by substantial evidence in her hypothetical question. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).

Plaintiff argues that the ALJ was required to use Dr. Crane's limitation that Plaintiff would miss at least four days of work per month. As discussed *supra*, the ALJ gave clear and convincing reasons for why she gave Dr. Crane's opinion "little weight" including that it was not based on a thorough review of treatment history and was inconsistent with the medical record. (ECF No. 11-12, p. 22). Plaintiff also complains that the hypothetical did not include her mental limitations

and that anxiety limits her ability to function around others.  However, the ALJ did consider her anxiety and incorporate limitations that the hypothetical worker "would need to work in a job away from the general public, could be in proximity to others, but not in close cooperation, and would need to be in a job that would have routine." (ECF No. 11-2, p. 66).  The ALJ also asked questions about the specific jobs identified and whether they involved interaction with the public.  The ALJ did not err at Step 5.

## VIII. CONCLUSION

The Commissioner's and ALJ's decision is supported by substantial evidence in the record and is based on proper legal standards. By reason thereof, this court must affirm the decision.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

For the aforesaid reasons, the Commissioner's decision must be affirmed by this court.

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED.**

3.  The Clerk is directed to enter Judgment dismissing the Complaint and the claims therein with prejudice.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 22nd day of May, 2013.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE